GENERAL TELEPHONE COMPANY OF THE SOUTHWEST *v.* ARKANSAS PUBLIC SERVICE COMMISSION

80-307                                        616 S.W. 2d 1

Supreme Court of Arkansas
Opinion delivered May 11, 1981
[Rehearing denied June 15, 1981.]

*Ward W. Wueste, Jr., Kent Foster, Beverly Bassett*, and *Mitchell, Williams, Gill & Selig*, for appellant.

*Jeff Broadwater*, for appellee.

JOHN I. PURTLE, Justice. The Public Service Commission approved a rate increase for General Telephone Company of the Southwest in an amount less than that for which General Telephone had applied. On appeal to the circuit court the order of the Commission was affirmed. General Telephone Company of the Southwest appeals from the order of the circuit court to this court on the ground that there was no substantial evidence before the Public Service Commission to support its application of "double leverage" to appellant.

GTSW sought an increase in the intrastate rates, excluding the city of Texarkana, in the amount of $1,893,-525. The PSC approved an annual rate increase of $1,498,-424. It is not disputed that the PSC used the "double leverage" concept in calculating its cost of common equity capital.

The "double leverage" methodology has been previously approved by this court in *Arkansas Public Service*

*Commission* v. *Lincoln-Desha Telephone Co., Inc.*, 271 Ark. 346 (1980); and *Southwestern Bell Telephone Co.* v. *Arkansas Public Service Commission*, 267 Ark. 550, 593 S.W. 2d 434 (1980). The question presented to us by the appellant is whether "double leverage" should be applied in their case because of the structure of the parent company which is GTE. It is not disputed that GTE, which wholly owns GTSW, has a number of non-utility corporations in its network of operations. Apparently the public utility portion of the business is more lucrative as the testimony indicated about 86% of GTE income was from public utility companies.

The witness for the PSC selected comparable companies from a list which consisted only of gas and electric utilities. Certainly, it would seem to us that utility companies which are comparable in general to the appellant would be a proper basis for comparison.

In the cases earlier mentioned we set forth the requirements by the courts in reviewing orders of the PSC and defining the methodology of "double leverage." Therefore, this opinion will be limited to the question brought to this court for resolution, that question being whether there is substantial evidence to support the order of the PSC in this rate case.

We have many times discussed the meaning of substantial evidence. Our rule is always that we view only the evidence most favorable to the appellee in such cases. In this case we will consider only the evidence most favorable to the PSC. In doing this we think the case must turn on the testimony of witness Phillip C. Fry. Mr. Fry is a financial analyst employed by the Arkansas Public Service Commission. Mr. Fry testified as to the manner in which he made his recommendations to the PSC. This witness determined that GTSW was entitled to an overall-rate return of 8.5089%. In arriving at this figure he utilized the weighted cost of capital approach whereby the costs of the individual capital components were weighted in relation to their proportion to the total capital structure. The sum of these weighted components cost was that which he applied to the cost of capital to

GTSW. Mr. Fry took his comparables from the September 1978 listing of Standard and Poor's stock guide. The 15 firms he used to determine the rate of return from GTE are shown in Exhibit PF-1, Schedule 8. These companies used as comparables are broken down further in Exhibit PF-1, Schedule 9. It is difficult to fully appreciate all of the ramifications from the various figures and statistics presented by Mr. Fry as well as those presented by witnesses for the appellant; however, all are valid methods of obtaining the rate of earnings necessary for the utility to remain competitive. It is the result reached rather than the method used which we consider on appeal.

We are not concerned with the methodology used by the Commission in arriving at the result so long as their finding is based upon substantial evidence. There is no question that "double leverage" is a valid method for obtaining the required rate for utilities. Appellant does not deny that "double leverage" is appropriate but insists that it is an inappropriate and unfair method in a case where the corporation is constituted in the manner of that of GTE. Appellant feels that the use of only utility comparables is unfair. However, we are still bound by the guidelines set forth more than 50 years ago in the case of *Bluefield Waterworks & Improvement Co.* v. *Public Service Commission*, 262 U.S. 679 (1923); and as followed some 20 years later in the case of *Federal Power Commission* v. *Hope Natural Gas Co.*, 320 U.S. 591 (1944). Both parties to this action appear to recognize the validity of these landmark cases. It seems to me that the basic holding in the *Bluefield* case was:

> . . . A public utility is entitled to such rates as will permit it to earn a return on the value of the property which it employs for the convenience of the public equal to that generally being made at the same time and in the same general part of the country on investments in other business undertakings which are attended by corresponding risks and uncertainties; but it has no constitutional right to profits such as are realized or anticipated in highly profitable enterprises or speculative ventures. . . .

This theory was reaffirmed in *Hope* by the following language:

> ... By that standard the return to the equity owner should be commensurate with returns on investments and other enterprises having corresponding risks. That return, moreover, should be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital. ...

We do not believe that the appellant has shown anywhere that this order by the PSC is contrary to either *Bluefield*, supra, or *Hope*, supra. We bottomed at least two prior decisions on these two cases. They were *Southwestern Bell Telephone Co.* v. *Public Service Commission*, supra, and *Public Service Commission* v. *Lincoln-Desha Telephone Co.*, supra. Additionally, we found that the testimony of witness Fry, as supported by exhibits, was substantial evidence; and, therefore, we must affirm the action of the trial court in affirming the order of the PSC.

Affirmed.

HAYS and HOLT, JJ., not participating.