GENERAL WATERWORKS COMPANY of Pine Bluff *v.*
ARKANSAS PUBLIC SERVICE COMMISSION

CA 87-52                                          752 S.W.2d 52

Court of Appeals of Arkansas
En Banc
Opinion delivered June 22, 1988
[Rehearing denied August 10, 1988.]

*Walton F. Hill* and *House, Wallace & Jewell, P.A.*, by: *E.B. Dillon, Jr.*, for appellant.

*George. C. Vena*, for appellee.

JOHN E. JENNINGS, Judge. General Waterworks Company of Pine Bluff (GWPB) applied to the Arkansas Public Service Commission for a rate increase to produce additional revenues of $726,230.00, which would represent an increase of about 17.98 %. The PSC granted appellant an increase of $255,627.00. Both of appellant's points for reversal relate to the appellee's treatment of the financial relationship between appellant and its parent corporation, General Waterworks Corporation (GWC), a holding company whose assets consist of General Waterworks Company of Pine Bluff and other utility and business operations nationwide. We affirm the decision of the Arkansas Public Service Commission.

Arkansas Code Annotated Section 23-2-423(c)(3), (4), and (5) (1987) defines and limits our scope of review:

(3) The finding of the commission as to the facts, if supported by substantial evidence, shall be conclusive.

(4) The review shall not be extended further than to determine whether the commission's findings are supported by substantial evidence and whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violated any right of the petitioner under the laws or Constitution of the United States or of the State of Arkansas.

(5) All evidence before the commission shall be considered by the court regardless of any technical rule which might have rendered the evidence inadmissible if originally offered in the trial of any action at law or in equity.

And our Supreme Court recently stated:

While we would reverse a decision where confiscatory rate making was evident, *Public Service Comm'n* v. *Continental Tel. Co.*, 262 Ark. 821, 561 S.W.2d 645 (1978); *Chicago M. St. P. Ry. Co.* v. *Minnesota ex rel. Railroad & Warehouse Comm.*, 134 U.S. 418 (1890), we are not concerned with the method the commission used, and the court of appeals approved, to determine the rate needed to supply the company adequately with working capital. *General Tel. Co.* v. *Arkansas Public Service Comm'n*, 272 Ark. 440, 616 S.W.2d 1 (1981).

\* \* \* \*

As long as the decision falls within the "zone of reasonableness" we cannot find it was confiscatory. *Public Service Comm'n* v. *Continental Tel. Co., supra.*

*General Telephone Co. of the Southwest* v. *Arkansas Public Service Comm'n*, 295 Ark. 595, 599-600, 751 S.W.2d 1 (1988).

The appellant calculated its adjusted test year rate of return on its rate base to be 8.41%. After hearings on the application, the Commission calculated the test year return to be 7.34%

instead of 8.41 % and increased the allowed rate to 8.58 %. In this appeal, appellant seeks relief which would increase its allowed return on rate base to 9.09 % and give it additional revenue of about $75,000.00.

Because appellant is a wholly-owned subsidiary of GWC, its stock is not publicly traded. Therefore, the calculation of an allowable fair return on GWPB's stockholder's equity is accomplished through the use of "double leverage." Double leverage means that the overall cost of capital for the parent corporation is the cost of equity to be allowed the subsidiary company in calculating the rates the subsidiary may charge its consumers. Double leverage carries with it an implicit recognition of the concept of fungibility of funds, in the sense that all the shareholder's equity and all the various liabilities of the parent company are not identifiable or traceable and aggregately fund the assets of the subsidiary. The validity of the concept of double leverage has been recognized in several cases and is not in question here. *General Telephone Co. of the Southwest* v. *Arkansas Public Service Comm'n*, 23 Ark. App. 73, 744 S.W.2d 392 (1988), *aff'd*, 295 Ark. 595, 751 S.W.2d 1 (1988); *see also General Telephone Co.* v. *Arkansas Public Service Comm'n*, 272 Ark. 440, 616 S.W.2d 1 (1981); *Arkansas Public Service Comm'n* v. *Lincoln-Desha Telephone Co.*, 271 Ark. 346, 609 S.W.2d 20 (1980).

In applying the principle of double leverage, it is first necessary to derive the parent corporation's overall cost of capital, which is then imputed to the subsidiary as its cost of shareholder's equity. Two items involved in that calculation, Accumulated Deferred Income Taxes (ADIT) and deferred income items relating to income to be realized in the future from installment sales of corporate property, are at issue here. The appellant also disagrees with the classification of these items on the liabilities side of GWC's balance sheet, from which appellant's cost of equity is derived.

ADIT is an item recognized on a company's books to provide funds to meet contingent tax liabilities in the event that proceeds from sales of property are not reinvested in such a manner as to avoid tax liability. The Commission accepted the recommendation of the PSC Staff that ADIT and deferred income items

booked by the parent corporation (GWC) as liabilities be included in the cost of capital calculation as cost-free. Appellant contends that ADIT may not be considered a cost-free source of capital because the amounts booked are, in reality, part of the capital gain realized on the sale of property and, as such, should be considered as an asset despite the fact that they appear on the liability side of the balance sheet. Further, appellant contends that, even if GWC's ADIT is included in its cost of capital calculation, it would carry a potential cost consisting of interest payable to the Internal Revenue Service if the tax liability is not avoided by qualified reinvestment. Appellant also argues that the balances of the deferred income accounts on GWC's books, likewise booked as liabilities, should not be included as zero-cost sources of capital at all or, alternatively, should carry a cost equivalent to the return on equity the PSC allowed the shareholder (GWC) in this case, which is 11.77%.

The appellee essentially contends that inclusion of ADIT and deferred income balances in the parent corporation's cost of capital calculation is proper on the basis that, if something is booked as a liability, then it is a liability, and all liabilities represent funding sources available to fund various corporate assets, one of which in this case is GWPB. This concept that the right side of the balance sheet (liabilities) fund the left side (assets) is one of the bases of a working capital methodology known as the "Modified Balance Sheet Approach" (MBSA). The use of the MBSA to determine the working capital requirement of a utility has been discussed in previous decisions of this Court and our Supreme Court. *General Telephone Co. of the Southwest* v. *Arkansas Public Service Comm'n*, 23 Ark. App. 73, 744 S.W.2d 392 (1988), *aff'd*, 295 Ark. 595, 751 S.W.2d 1 (1988). While the MBSA was not applied to determine GWC's working capital here as it was in those cases (although the MBSA apparently was applied to appellant, GWPB, for that purpose) its basic premise, that all liabilities are to be treated alike, controlled the PSC's treatment of GWC's funding sources in this case. The Commission found that the appellant's position as to these liabilities on its parent corporation's books would require tracing of specific items of capital funding sources which would, of course, be inconsistent with the concept of fungibility of funds.

We do not accept the company's position that the ADIT bear

interest which must be paid to the IRS. Because ADIT represent only a contingent liability, the cost associated with that liability cannot be determined unless and until a taxable event occurs.

Although the appellee was presented with expert testimony by the appellant in support of its position in this case, there was also testimony from expert witnesses which supports the result reached by the Commission. From our review of the record, we cannot say that the PSC's findings as to nature and cost of ADIT and deferred income accounts were not supported by substantial evidence. On review, our inquiry is concluded if the factual determinations of the Commission are supported by substantial evidence and are not confiscatory. *General Telephone, supra.* Because the result reached in this case cannot be said to be confiscatory and the findings of the Commission are supported by substantial evidence, we affirm.

Affirmed.