ARKANSAS CHARCOAL COMPANY, A Division of
Arrow Industries, Inc. and TXO Production Corp. *v.*
ARKANSAS PUBLIC SERVICE COMMISSION and
Arkansas Western Gas Company

89-13                                    773 S.W.2d 427

Supreme Court of Arkansas
Opinion delivered July 3, 1989

*Ivester, Henry, Skinner & Camp*, by: *Hermann Ivester* and
*Valerie F. Boyce*, for appellee Arkansas Charcoal Co.

*Rose Law Firm, A Professional Association*, by: *Carol S.
Arnold*, for appellant TXO Production Corp.

*George C. Vena*, Assistant Counsel, for appellee Arkansas
Public Service Commission.

*Keck, Mahin & Cate*, by: *Robert Y. Hirasuna; Jeffrey L. Dangeau*, for appellee Arkansas Western Gas Company.

*Steve Clark*, Att'y Gen., by: *Paul L. Cherry*, Asst. Att'y Gen., for appellee Consumer Utility Rate Advocacy Division.

*Arkansas Louisiana Gas Company*, by: *Kathleen D. Gardner* and *Sandra L. Smith*, for amicus curiae Arkansas Louisiana Gas Company.

STEELE HAYS, Justice. In July, 1986, Arkansas Charcoal Company (ACC) entered into two contracts with TXO Production Corporation (TXO) entitled "Gas Sales Agreement" and "Option to Purchase Facilities." Under the terms of those contracts TXO agreed to construct and install a gas pipeline and related facilities to connect TXO's Earl "A" No. 1 and Kalamazoo No. 1 wells in Logan County to ACC's charcoal manufacturing plant in Paris. In return, ACC agreed to buy from TXO up to 400 million British thermal units of natural gas daily and to pay for the cost of constructing the gas pipeline. In January, 1987, TXO commenced the operation and sales of gas through this pipeline to ACC. Simultaneously, ACC terminated its gas purchases from Arkansas Western Gas (AWG).

On January 21, 1987, AWG petitioned the Public Service Commission (PSC) for an order directing TXO to appear and show cause why it should not be prohibited from providing gas service to ACC until (1) it complied with Arkansas law and regulations for public utilities and (2) obtained a Certificate of Environmental Compatibility and Public Need (CECPN) required by the Utility Facility Environmental and Economic Protection Act (UFEEPA), Ark. Code Ann. § 23-18-501, *et seq.* (1987). In the alternative, AWG requested authorization to abandon its obligation to supply gas to ACC.

The PSC conducted a public hearing on October 27, 1987, and on May 17, 1988, issued Order No. 38. The order stated that the pipeline constructed by TXO for ACC constituted a "major utility facility," as defined in the UFEEPA, and therefore, an application for a certificate of public need should have been filed with the PSC prior to the pipeline's construction. In addition, Order 38 required TXO and ACC to cease and desist from operating the pipeline facility. TXO and ACC moved for a

rehearing and the PSC issued Order No. 39 denying the petition for rehearing and ordering compliance with Order No. 38.

TXO and ACC appealed Orders No. 38 and No. 39 to the Court of Appeals. The Court of Appeals held that the gas pipeline constituted a "major utility facility" as defined by the UFEEPA, but that TXO and ACC had complied with the act by filing an environmental impact statement. The PSC's cease and desist order was reversed. *Arkansas Charcoal Co.* v. *Arkansas Public Service Comm'n*, 26 Ark. App. 202, 762 S.W.2d 403 (1988). We granted certiorari on petition of the PSC and AWG that we review matters of legal significance and public interest in the Court of Appeals decision. Accordingly, we affirm the Court of Appeals' reversal of the cease and desist order, and reverse that part of the decision applying the UFEEPA to TXO and ACC.

■ The Utility Facility Environmental and Economic Protection Act applies to public utilities. The broad policy objectives articulated by the General Assembly in its legislative findings and declarations as well as the express definitions within the act evince such application. The legislative findings, as codified in Ark. Code Ann. § 23-18-502(a)-(c) state:

> (a) The General Assembly finds and declares that there is at present and will continue to be a growing need for *electric and gas public utility services* which will require the construction of major new facilities.

> (b) . . . it is essential in the public interest to minimize any adverse effect upon the environment and upon the quality of life of the people of the state which *such new facilities* might cause . . .

> (c) . . . Present laws and practices may result in undue costly delays in new construction, may encourage the development of energy technologies which are relatively inefficient and may increase costs, which will eventually be borne by the people of the state in the form of *higher utility rates.* [Our emphasis.]

Public utility language pervades the act. Clearly, the legislature's intent focused on regulating public utility's construction of new facilities.

■ Moreover, the statutory definitions contained in the act dispel any doubts as to the legislature's intent. Ark. Code Ann. § 23-18-503(9) provides:

> *'Public utility' or 'utility'* means any person engaged in the production, storage, distribution, sale, delivery, or furnishing of electricity or gas, or both, *to or for the public,* as defined in § 23-1-101(4)(A)(i) and (4)(B). [Our emphasis.]

The PSC and AWG argue that TXO and ACC violated the act by constructing a major utility facility without first obtaining a certificate of environmental compatibility and public need as required by § 23-18-510(a). However, because the act defines the terms *public utility* and *utility* identically the definition of "major utility facility" reads as "major [public] utility facility." TXO and ACC failed to construct a major *public* utility facility. The construction of the private pipeline required no certificate of environmental compatibility and public need.

The PSC and AWG focus on the word "person"[1] defined in § 23-18-503. Because "person" is defined broadly, they argue that the legislature intended the act to apply to both public and private utilities. However, a "person" must still be constructing a "major utility facility," i.e., a "major public utility facility," according to the statutory definition.

Additionally, the PSC and AWG rely on the legislature's 1977 amendments to this act. The legislature substituted the word "applicant" for the words "public utility." Ark. Code Ann. § 23-18-503(10) states that applicant means *the utility or other person* making application to the commission for a certificate of environmental compatibility and public need. While the definition of applicant allows "other persons" to make application for a certificate, it does not require "other persons" to obtain a certificate.

Further evidence of the fact that the legislature intended this act to apply only to public utilities is found in § 23-18-528(2).

---

[1] "Person" includes any individual, group, firm, partnership, corporation, cooperative association, municipality, government subdivision, government agency, local government, or other organization.

This provision grants the power of eminent domain to any applicant granted a CECPN. To interpret the act as including private facilities would grant to an applicant the power of eminent domain for purely private purposes, a result which is manifestly unconstitutional. *See Arkansas State Highway Comm'n* v. *Alcott*, 260 Ark. 225, 539 S.W.2d 432 (1976).

Having decided that the UFEEPA applies to public utilities, the next question we must answer is whether either TXO or ACC are public utilities. Understandably, AWG contends that the question as to the status of TXO and ACC should be remanded to the PSC for this determination. Yet the PSC failed to make a finding as to the public utility status of TXO and ACC before issuing Order #38. The statute by which the Court of Appeals reviews the actions of the commission, Ark. Code Ann. § 23-2-423(c)(3), (4), and (5) (1987), limits the review as follows.

(3)  The finding of the commission as to the facts, if supported by substantial evidence, shall be conclusive.

(4)  The review shall not be extended further than to determine whether the commission's findings are supported by substantial evidence and whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violated any right of the petitioner under the laws or Constitution of the United States or of the State of Arkansas.

(5)  All evidence before the commission shall be considered by the court regardless of any technical rule which might have rendered the evidence inadmissible if originally offered in the trial of any action at law or in equity.

*See also General Tel. Co.* v. *Arkansas Public Service Comm'n*, 295 Ark. 595, 751 S.W.2d 1 (1988). In this case, the commission *did not find* that TXO or ACC operated as public utilities. On appeal, the briefs are replete with testimony and arguments as to whether TXO or ACC qualify as a public utility. We find neither TXO or ACC operated as public utilities.

■ A public utility is generally defined as a business or

service which is engaged in regularly supplying the public with some commodity or service of public consequence, such as electricity, gas, water, transportation, telephone or telegraph service. 64 Am. Jur. 2d *Public Utilities* § 1 (1972).[2] UFEEPA defines public utility as any person engaged in the production, storage, distribution, sale, delivery, or furnishing of electricity or gas, or both, *to or for the public.* Ark. Code Ann. § 23-18-503(9). A determinative characteristic of a public utility is that of service to, or readiness to serve, an indefinite public, or a portion of the public.

The record reveals that TXO sold gas to one other industrial end user in Arkansas besides ACC. Testimony indicated that TXO did not intend to construct future pipeline for additional industrial customers. Admittedly, it is not the number of customers served which is determinative of public utility status, but rather whether a person or company holds itself out to serve all who wish to avail themselves of the service. *State Public Utilities Commission, ex. rel. Macon County Telephone Company* v. *Bethany Mutual Telephone Association*, 270 Ill. 183, 110 N.E. 334 (1915). TXO stated that it maintained the right to refuse service to any potential customer. We agree with the finding of the Court of Appeals that "there is no evidence that it [TXO/ACC pipeline] was constructed to serve any other person or entity besides ACC, or that any other user is anticipated." Therefore, TXO fails to provide service "to or for the public." Likewise, ACC, as owner of the pipeline, is simply providing gas service for itself, and does not purport to provide service "to or for the public." Neither TXO or ACC provided service for the public, nor do the facts indicate that either entity dedicated the pipeline for public use.

Affirmed in part, reversed in part.

---

[2] The definition of public utility as found in Subtitle 1: Public Utilities and Carriers, Ark. Code Ann. § 23-1-101(4)(A) (Supp. 1987), states "Public utility" includes persons and corporations, or their lessees, trustees, and receivers, owning or operating in this state for (i) Producing, generating, transmitting, *delivering, or furnishing gas*, electricity, steam, or another agent for the production of light, heat, or power *to, or for, the public for compensation.*