The Honorable Jodie Mahony State Senator 106 West Main, Suite 406 El Dorado, Arkansas 71730
Dear Senator Mahony:
This official Attorney General opinion is issued in response to your recent question regarding the sale and transportation (wheeling) of power by a port authority. You have presented the following question:
 May a county port authority sell or wheel power to existing industries that locate in the county prior to deregulation of the power industry in the State of Arkansas?
It is my opinion that the answer to this question will depend upon certain facts of which I have not been apprised. I therefore cannot opine conclusively in response to your question; however, I can address the legal issues that you have raised and can set forth the guidelines that have been articulated by the General Assembly and the Arkansas Supreme Court regarding these issues.
As an initial matter, I must note that we have assumed your question to be limited to an inquiry concerning the requirements of Arkansas state law. We have limited our response to that scope. It should be noted that certain federal laws and regulations may also impact upon the issues that you have raised, depending upon the facts surrounding such issues, and should be considered.
I note that you have specifically inquired about a "county port authority." I assume that you are referring to a port authority formed pursuant to the provisions of A.C.A. § 14-185-101 et seq., which authorizes counties, either in combination with other counties, or in combination with municipalities, to form port authorities. Port authorities organized under A.C.A. § 14-185-101 et seq. are referred to in those statutes as "metropolitan port authorities." (Municipalities are separately authorized to form port authorities, under the provisions of A.C.A. § 14-186-201 et seq.)
It is my opinion that both metropolitan and municipal port authorities can sell or transport power — but only within the limitations of the port authority statutes, and — depending upon the facts — under the regulatory oversight of the Public Service Commission.
The Limitations of the Port Authority Statutes
The port authority statutes authorize port authorities to "acquire, purchase, install, lease, own, hold, use, control, construct, equip, maintain, develop, and improve . . . utilities" in connection with "establishing, developing, improving, and maintaining the ports, harbors, river-rail terminals, barge terminal, and parks for industrial and commercial operations." A.C.A. § 14-185-108(a)(2) (emphasis added).See also A.C.A. § 14-186-204(a)(2).
Although it is unclear whether a port authority could sell power under the above-quoted statute, the provisions that empower port authorities to sell their "facilities" could be construed to allow them to sell power. A metropolitan port authority created pursuant to A.C.A. § 14-185-101 etseq., is specifically authorized to "sell, contract concerning, or lease any of its . . . facilities of whatever nature and to permit the use of any such facilities by any person engaging in any industrial or commercial activity." A.C.A. § 14-185-109(12). (Municipal port authorities created pursuant to A.C.A. § 14-186-201 et seq., are given the same authority in A.C.A. § 14-186-207(10).)
"Facilities" are defined in A.C.A. § 14-185-102(9) and A.C.A. §14-186-201(2) as "any real property, personal property, or mixed property of any and every kind." "Facilities" are further described in A.C.A. §14-185-108(a)(2), A.C.A. § 14-186-204(a)(2), and in A.C.A. §14-186-201(2) as including "utilities." These definitions and descriptions of the term "facilities" are broad enough to be interpreted to encompass power. It follows, therefore, that these provisions could be read as empowering port authorities to sell power, or contract to transport power.
However, even if the provisions of A.C.A. § 14-185-109(12) and A.C.A. §14-186-207(10) are interpreted to authorize port authorities to sell and transport power, that authority is expressly limited. It can only be exercised in connection with carrying out the purposes of A.C.A. §14-185-101 et seq. and A.C.A. § 14-186-201 et seq. See A.C.A. §14-185-109 (opening sentence) and A.C.A. § 14-186-207 (opening sentence). Those purposes are set forth in A.C.A. § 14-185-108 and A.C.A. § 14-186-204, and are all expressly tied to the development of harbors, ports, river-rail terminals, barge terminals, and parks in Arkansas for industrial and commercial operations.
Because the sale and transportation of power that are authorized in A.C.A. § 14-185-109(12) and A.C.A. § 14-186-207(10) must be carried out in connection with the purposes of the port authority statutes, it follows that in order for a port authority's sale and transportation of power to be permissible, the sale and transportation must be executed in connection with the development of harbors, ports, river-rail terminals, barge terminals, and parks in Arkansas for industrial and commercial operations. The issue of whether a given sale or transportation transaction is carried out in such connection is a fact-intensive question that will turn entirely upon the nature of the particular transaction and its specific circumstances.
If a port authority's sale or transportation of power were challenged, the port authority would be required to establish evidentially that the challenged sale or transportation of power was being conducted in connection with the development of harbors, ports, river-rail terminals, barge terminals, and parks in Arkansas for industrial and commercial operations. I am unable to opine as to the type of proof that might be deemed by a court to be sufficient to establish such a connection. I therefore cannot reach any conclusions as to whether the particular sale or transportation about which you have inquired is, in fact, within the scope of the port authority statutes.
Nevertheless, it can be concluded that the issue of whether the sale or transportation of power is within the port authority's power granted in A.C.A. § 14-185-109(12) will depend upon the specific nature and circumstances of the particular sale and transportation, and whether the transaction is in connection with the described purposes of a port authority as set forth in A.C.A. § 14-185-108 and A.C.A. § 14-186-204. If the facts and evidence can sufficiently establish (to the satisfaction of the trier of fact) that all sales and transportation of power by the port authority in question are carried out in connection with the purpose of developing harbors, ports, river-rail terminals, barge terminals, and parks in Arkansas for industrial and commercial operations, then they are likely within the permitted activities of port authorities. They may, however, be subject to regulation by the Public Service Commission, as discussed below.
The Regulatory Oversight of the Public Service Commission
The authority of port authorities to engage in the sale and transportation of power may be limited not only by the strictures of the port authority statutes, but also by the fact that these activities may be subject to the regulatory supervision of the Public Service Commission.
The Public Service Commission is empowered to regulate "public utilities." See generally A.C.A. § 23-2-301 and -304. When an entity engages in the sale and transportation of power to the public for compensation, it can constitute a "public utility," as that term is defined by the public utility statutes, to the extent that the entity engages in such activities. If so, it is subject to the regulatory authority of the Public Service Commission.
The public utility statutes define a "public utility" as including:
 "Public utility" includes persons and corporations,[1] or their lessees, trustees, and receivers, owning or operating in this state equipment or facilities for:
 (i) Producing, generating, transmitting, delivering, or furnishing gas, electricity, steam, or another agent for the production of light, heat, or power to, or for, the public for compensation. . . .
A.C.A. § 23-1-101(4)(A)(i).
There are no Arkansas decisions addressing the issue of whether a port authority falls within the above definition. There are also exceptions to the definition of "public utility," none of which expressly except port authorities. Assuming, however, that a port authority selling or transporting power to the public for compensation is a public utility, it is subject to regulation of those activities by the Public Service Commission and must adhere to the requirements that are imposed by law or by the Public Service Commission upon public utilities with regard to those activities.
Prior to discussing those requirements, I must point out that the question of whether a particular entity and its activities constitutes a "public utility" within the definition discussed above can also be a question of fact. The Arkansas Supreme Court addressed this issue inArkansas Charcoal Coal Co. v. Ark. Pub. Serv. Comm'n., 299 Ark. 359,773 S.W.2d 427 (1989). In that case, the Arkansas Charcoal Co. had entered into contracts with the TXO Production Co. under which TXO agreed to build a gas pipeline connecting TXO's facilities with Arkansas Charcoal's manufacturing plant, and Arkansas Charcoal agreed to buy a certain amount of gas from TXO. A competing gas company argued that by engaging in the activity of selling gas, TXO constituted a public utility and was subject to the regulatory oversight of the Public Service Commission. The Arkansas Supreme Court rejected the argument, holding that TXO was not a public utility (and was therefore not subject to the Public Service Commission's regulation).
The court stated: "A determinative characteristic of a public utility is that of service to, or readiness to serve, an indefinite public, or a portion of the public." Arkansas Charcoal, 299 Ark. at 364. The court noted that TXO sold gas to only one other end user in Arkansas and that it did not intend to construct future pipelines for additional industrial customers. The court went on to state:
 [I]t is not the number of customers served which is determinative of public utility status, but rather whether a person or company holds itself out to serve all who wish to avail themselves of the service.
Id.
The holding of Arkansas Charcoal indicates that in order to determine whether a port authority's sale or transportation of power is subject to the Public Service Commission's regulatory control, it will be necessary to consider the particular nature and circumstances of those transactions. For this additional reason, I cannot opine conclusively as to whether the port authority about which you have inquired would, in fact, be regulated by the Public Service Commission.
If, from all the facts and circumstances, it is determined that a port authority's sale and transportation of power is subject to regulation by the Public Service Commission, the port authority must, as pointed out previously, adhere to the requirements that are imposed by law and by the Commission upon public utilities.
One such requirement is the obtaining of the Public Service Commission's approval to sell or transport power. Under A.C.A. § 23-3-201, all entities which undertake to operate equipment or facilities for the purpose of supplying public service[2] must first obtain the approval of the Public Service Commission. This statute states:
 (a) No new construction or operation of any equipment or facilities for supplying a public service, or extension thereof, shall be undertaken without first obtaining from the commission a certificate that public convenience and necessity require, or will require, such construction or operation.
A.C.A. § 23-3-201.
Under the above-quoted provision, a port authority that is determined to be subject to the Public Service Commission's authority clearly would be required to obtain a certificate of public convenience and necessity from the Public Service Commission prior to transporting or selling power to local industries.
In addition, under the current structure of the regulated electric industry, the various geographic areas of the state are allocated to specific providers of electric power.[3] This allocation essentially grants a legal monopoly in the allocated area to the public utility to whom that area is allocated. It is unlawful for any other public utility to operate in an area that has been allocated to another provider. The prohibition is stated in A.C.A. § 23-18-101, as follows:
 Notwithstanding any provisions of law or the terms of any certificate of convenience and necessity, franchise, permit, license, or other authority granted to a public utility or electric cooperative corporation by the state or a municipality, no public utility or electric cooperative corporation shall furnish, or offer to furnish, electric service at retail and not for resale in any area allocated by the Arkansas Public Service Commission to another electric cooperative corporation or public utility.
A.C.A. § 23-18-101.
Therefore, if the port authority about which you have inquired is factually and legally determined to constitute a public utility as discussed previously, and it seeks to sell or transport power in a geographic area that has already been allocated to another provider of electric power, the port authority may not sell or transport electricity in that area without violating the above-quoted provision.
Summary
Port authorities are authorized under their own statutes to sell or transport power in connection with carrying out the limited purposes of their statutes. Their authority to do so is further limited by the fact that the nature of their transactions may subject them to the regulatory authority of the Public Service Commission.
Both the question of whether a port authority's transactions are carried out in connection with the purposes of the port authority statutes, and the question of whether the port authority is subject to the regulatory supervision of the Public Service Commission, are questions of law and fact that will turn upon the specific circumstances surrounding the particular port authority and its transactions.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] The terms "persons" and "corporations" are defined as follows:
 (1) "Corporation" includes, but is not limited to, a private corporation, an association, a joint-stock association, a business trust, and an electric cooperative corporation providing service for charge or compensation in any area or from any facility for which the commission has granted a certificate of convenience and necessity;
 (2) "Person" includes a natural person, a trustee, lessee, receiver, holder of beneficial or equitable interest, a partnership, or two (2) or more persons having a joint or common interest, and a corporation as defined in subdivision (1). . . .
A.C.A. § 23-1-101(1)and (2). It should be noted that A.C.A. § 14-185-109
and A.C.A. § 14-186-207, which set forth the powers of port authorities, state that port authorities shall "[h]ave the powers of a body corporate. . . ." A.C.A. § 14-185-109(1); A.C.A. § 14-186-207(1).
[2] The term "service" is defined as follows:
 (9) "Service" includes any product or commodity furnished and the plant, equipment, apparatus, appliances, property, and facilities employed by any public utility in performing any service or in furnishing any product or commodity devoted to the public purposes of the utility and to the use and accommodation of customers or patrons. . . .
A.C.A. § 23-1-101(9).
[3] Your question does not specify whether it refers to the sale and transportation of electric power. If so, the above discussion will be pertinent to the question.