The Honorable Mike Huckabee Governor State Capitol Little Rock, AR 72201
Dear Governor Huckabee:
This is in response to your request for an opinion concerning the alleged impropriety of placing the Department of Human Services ("DHS") Office of Appeals and Hearings ("OAH") under the supervisory authority of the Office of Chief Counsel ("OCC"). You note that currently, OAH "is reporting to the Office of Chief Counsel." You state that two issues have been raised in connection with this organizational structure:
 1. Whether it is permissible for OAH to report anywhere other than to the DHS Director?
 2. Whether OAH reporting to the Office of Chief Counsel is somehow violative of legal or ethical standards to which OAH hearing officers are subject?
A conclusive answer to your first question would require reference to the alternative organizational structure, with particular consideration given to the actual exercise of supervisory authority over OAH. As a general matter, however, I believe the answer is "yes." That is, my research has yielded no support for the proposition that OAH must report only to the Director.
With regard, specifically, to the legality of OAH reporting to OCC, again, I believe the actual reporting process would have to be considered. Generally, however, it is my opinion that the structuring of OAH under OCC is not inherently unlawful, as long as there is no evidence of bias or unfairness in the actual decision making process.
Your questions raise the issue of whether the right to due process, which is secured by the Arkansas Constitution (art. 2, § 8) and ultimately by the Fourteenth Amendment to the U.S. Constitution, is impaired by having OAH report to OCC. Unlike the Federal Administrative Procedures Act, the Arkansas Administrative Procedure Act ("APA"), A.C.A. § 25-15-201 etseq., contains no prohibition with respect to supervision of employees who preside at agency hearings by employees engaged in investigative or prosecuting functions. See 5 U.S.C.S. § 554(d) (federal APA). Thus, even assuming that the supervisory structure involving OAH and OCC would be prohibited under the federal APA, this is not determinative of your questions.
Nor, in my opinion, do any general ethical standards or requirements prohibit this supervisory structure. The Arkansas Code of Judicial Conduct requires that a judge shall avoid the appearance of impropriety (Canon 2) and shall perform judicial duties without bias or prejudice (Canon 3). It seems clear, however, that the inquiry under these Canons is whether actual bias or prejudice is exhibited. See, e.g., Reel v. State,318 Ark. 565, 886 S.W.2d 615 (1994) (in reviewing trial judge's refusal to recuse in response to a claim of bias, the record is reviewed to determine if prejudice or bias is exhibited). Thus, in my opinion, a structure or scheme under which OAH reports to OCC is not per se
violative of the judicial canons.
With regard to the due process issue, I have found no authority for the proposition that due process is necessarily denied by a structure under which hearing officers report to the same general counsel as agency representatives and investigators. Indeed, the U.S. Supreme Court has on at least one occasion rejected an objection to the supervision of an agency hearing officer by agency officials charged with investigative and prosecuting functions. Marcello v. Bonds, 349 U.S. 302 (1955), involved special inquiry officers of the Immigration and Naturalization Service who were subject to the supervision of immigration district directors as well as higher Service officials, all of whom had agency enforcement responsibilities. 349 U.S. at 306. The court rejected the argument that "the presence of this relationship so strips the hearing of fairness and impartiality as to make the procedure violative of due process." Id. at 311. This contention was rejected in part based upon long-standing practice. Id.
In considering a due process argument against having OAH report to OCC, it must be recognized that the U.S. Supreme Court has never held an adjudicatory system unconstitutional on the basis that the functions of investigation, prosecution, and adjudication were insufficiently separated. Davis, Administrative Law Treatise 98 (3rd ed. 1994). Seealso 73A C.J.S. Public Admin. Law and Proc. § 138 (1983). It is generally noted in this regard that as long as the one challenging the fairness of an administrative decision demonstrates nothing more than a combination of functions in the same official, the process will be upheld. Id. at 88. The leading case regarding the combination of adjudicative and investigative functions is Withrow v. Larkin, 421 U.S. 35 (1975), wherein the U.S. Supreme Court noted that its cases "offer no support for the bald proposition . . . that agency members who participate in an investigation are disqualified from adjudicating." 421 U.S. at 52.
The court in Withrow noted that there may be situations in which the risk of unfairness or the probability of actual bias may be intolerably high.Id. at 47. But in my opinion it is unlikely that the mere structuring of OAH under OCC would be held to pose such a risk. As noted above, the Arkansas APA does not prevent this structure. Nor have I been presented with any special facts or circumstances suggesting that there is a high risk of unfairness or bias in this situation. Certainly, if there was evidence that OAH reports to OCC in terms of OCC reviewing, approving, or modifying decisions, or otherwise exercising supervisory authority in the decision-making process, then a different question would be presented. But it is my understanding that OAH operates as an independent unit with its own deputy counsel, and that the supervisory authority of OCC is exercised primarily in the areas of personnel and budgeting. In other words, it appears that the hearing officers within OAH exercise their independent judgment in the decision-making process. Indeed, although decided in a different context, the case of Robinson v. Langdon,333 Ark. 662, ___ S.W.2d ___ (1998), appears to affirm this element of independence. The Arkansas Supreme Court in Robinson determined that the role of a DHS hearing officer met the test for judicial immunity which, in part, requires assurance that the hearing officer can perform his or her functions independently. 333 Ark. at 670.
This is not to say that the adjudicatory process will not be more closely scrutinized in this situation. The Arkansas Supreme Court has expressed its concern that there is a "serious appearance of impropriety" when an agency that is placed in a decision-making role has its own staff before it as a party. General Tel. Co. v. Arkansas Pub. Serv. Comm'n,295 Ark. 595, 602, 751 S.W.2d 1 (1988). But it is clear from General Tel.Co. that the court is unwilling to assume prejudice or bias, or find a due process violation, based merely upon a combination of adjudicatory and prosecutorial or investigatory functions. The one challenging the procedure will have the burden of demonstrating that he was denied due process. Id. See also Walker v. Sup. Ct. Comm. on Prof.Conduct, 275 Ark. 158, 162, 628 S.W.2d 552 (1982) (noting that a committee such as the Committee on Professional Conduct, with dual functions of prosecution and adjudication, has been held constitutional (citingWithrow, supra)).
In conclusion, therefore, it is my opinion that in the absence of facts or circumstances evidencing actual bias or prejudice, neither the Due Process clause, nor any other legal or ethical standard generally precludes an organizational structure under which the Office of Appeals and Hearings reports to the Office of Chief Counsel.
Assistant Attorney General Elisabeth A. Walker prepared the following opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh